UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GAYLE M. FORADORI,

       Plaintiff,                     Civil Action No. 05-71830

v.                               HON.  GEORGE CARAM STEEH
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

       Plaintiff Gayle M. Foradori brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for disability and disability insurance benefits under the Social Security Act (Tr. 51-53).  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED,  remanding this case for further fact-finding.


## PROCEDURAL HISTORY

-1-

On April 5, 2000, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset date of November 22, 1998 (Tr. 33). Upon initial denial of her claim, Plaintiff requested an administrative hearing, held on July 24, 2001 in Oak Park Michigan (Tr. 369). Administrative Law Judge ("ALJ") Michael F. Wilenkin presided, with Vocational Expert ("VE") Lawrence Zatkin testifying (Tr. 398-407). Non-attorney Cynthia Lachowski represented Plaintiff. On October 4, 2001 the ALJ found that although Plaintiff was unable to perform her past relevant work at the light exertional level, she retained transferable skills allowing her to perform work at the sedentary level of exertion (Tr. 15). After filing for judicial review, on July 17, 2002, parties stipulated to a remand, based on the ALJ's erroneous finding that Plaintiff experienced an insufficient number of trigger points to support a diagnosis of fibromyalgia (Tr. 592).

ALJ Wilenkin held a second hearing on June 20, 2003 (Tr. 777). Attorney Eva Guerra represented Plaintiff. On September 12, 2003, the ALJ again found that Plaintiff retained transferable skills (Tr. 602). On March 11, 2005, the Appeals Council denied review, concluding that the ALJ complied with the remand order (Tr. 409). Plaintiff filed a claim for judicial review on May 10, 2005.

## **BACKGROUND FACTS**

Plaintiff, born April 29, 1950, graduated from high school and received an Associate's degree in general studies (Tr. 373). She has past work experience as a Departmental Aide for the Secretary of State (Tr. 53). She alleges disability due to fibromyalgia, osteoarthritis, irritable bowel syndrome, angioplasty, anxiety, and depression (Tr. 44).

### A.  Plaintiff's Testimony

#### i.  July 24, 2001 Hearing

Plaintiff, born April 29, 1950, testified that she lived in Warren, Michigan with her husband and adult son (Tr. 370).  She indicated that she drove only occasionally due to pain and fatigue (Tr. 371-372).  She reported that she had not performed gainful employment since taking a leave of absence from the Secretary of State's office in early 1999 (Tr. 374).  She estimated that her former position kept her "on her feet" 90 percent of the time, further requiring her to lift up to 25 pounds as well as interacting with the public, handling money, monitoring inventory, and writing reports (Tr. 374-375).

Plaintiff alleged that her muscle pain, originally confined to her shoulders, neck, and upper back, now extended to her hips, lower back, and elbow (Tr. 377-378).  She reported partial relief from pool therapy, ultra sound, and weight training (Tr. 380-381).  She reported taking aspirin, Darvon, Tenoril, Vioxx, Prilosec, Ambien, and antidepressants on a daily basis, indicating that the medications combined with inactivity resulted in weight gain (Tr. 381-383, 387-388).  She testified that she currently treated with both a psychiatrist and a rheumatologist (Tr. 384).

Plaintiff testified that she required assistance in bathing, grooming, and dressing, adding that her husband and adult daughter helped her (Tr. 388-389).  She reported that she performed only light household chores such as wiping the kitchen counter or loading a washing machine (Tr. 391).  She stated that her condition prevented her from grocery shopping or church attendance (Tr. 392).  She estimated that she was unable to walk more

than a few hundred feet without tiring, adding that she was unable to sit in one position for more than 15 minutes and that she was completely unable to stoop or squat (Tr. 392-393). She reported that her poor balance required her to use a cane two to three times a month, adding that she lacked that ability to raise her arms to shoulder level (Tr. 395). She estimated that she could not lift more than ten pounds, further alleging that pain and fatigue required her to lie down between four and five times each day for 10 to 15 minutes (Tr. 396). Despite Plaintiff's testimony that her limitations rendered her disabled, she acknowledged that she had recently taken a vacation to Alaska with her husband (Tr. 397).

### ii. June 20, 2003 Hearing

Plaintiff, now 53, testified that fatigue and pain continued to prevent her from working (Tr. 777-778). She reported constant jaw, neck, shoulder, and lower back pain due to fibromyalgia, adding that she also suffered from chest pains as a result of anxiety (Tr. 778-779). She stated further that her angina was partially relieved with Nitroglycerine (Tr. 779). She estimated that on a typical day, she experienced six to seven level pain on a scale of one to ten (Tr. 780). She alleged only partial relief from various medications but alleviated her discomfort by reclining (Tr. 781). She estimated that she spent an entire day in bed one day a week (Tr. 782).

Plaintiff reported that she was unable to sit in any position for more than 15-20 minutes and could walk or stand for only 20-30 minutes (Tr. 785). She added that although her physician had advised her to walk 30 minutes a day, she experienced anxiety when walking alone (Tr. 784). She stated that anxiety and depression, which she deemed the result

-4-

of her physical problems, had improved after taking Xanax (Tr. 786).   She also attributed her short-memory problems to her physical condition (Tr. 788).  She expressed concern that taking Remeron had caused weight gain and heightened her chances of becoming diabetic (Tr. 790-791).  She reported that Vioxx improved her symptoms of osteoarthritis, but that she continued to experience trouble grasping objects, stating further that Vioxx did not improve the  discomfort created by fibromyalgia  (Tr. 791-792).  She also alleged pain and swelling in her feet, ankles, and calves, stating that experienced moderate partial relief from Mirapex and exercise (Tr. 794).

### B.  Medical Evidence

#### i.  Treating Sources

In November, 1996, Plaintiff underwent a successful angioplasty (Tr. 328).  Treating staff found that although she expressed a desire for cardiac rehabilitation she had "no further disability or limitations in her activity" after the weekend following surgery (Tr. 328). January, 1997 notes from an evaluation by Mark Ketterer, Ph.D., for entry into a cardiac rehab reversal program describe Plaintiff as a well-groomed and middle-aged, with an "outspoken and somewhat defensive/contentious" manner, noting further that she exhibited "a need to control events"  (Tr. 121).  In March, 1998, Plaintiff complained of joint pain and stiffness (Tr. 258).   Two months later, Plaintiff, 5' 5,"continued to report joint stiffness, noting that she now weighed 182 pounds (Tr. 247).  In the summer of 1998, Plaintiff's family reported that she experienced forgetfulness (Tr. 111-112).  Plaintiff also reported continued joint stiffness and additional weight gain (Tr. 232, 243).   In September, 1998, Michael

Lubetsky, M.D., opined that Plaintiff experienced fibromyalgia (Tr. 232).

In March, 1999 Plaintiff sought treatment for her complaints of cognitive decline (Tr. 104). Mark Lovell, Ph.D., found that "with regard to memory processes, [Plaintiff's] performance was suggestive of at most very mild difficulty in learning and retaining new information" (Tr. 104). He noted that Plaintiff appeared depressed and anxious, concluding that "testing does suggest a tendency to develop multiple physical symptoms when faced with psychological stressors" (Tr. 104, 106).

In April, 1999 Allen Goldberg, M.D., noting that Plaintiff had been diagnosed with fibromyalgia, reported that she appeared "clearly anxious" (Tr. 208). In August, 1999, Richard Lubetsky, M.D., found that Plaintiff experienced fibromyalgia, opining that her "severe limitation of functional capacity" made her prognosis "fair" (Tr. 124). He concluded that although Plaintiff was unable to return to work immediately, she could resume her former job in January, 2000 (Tr. 124).

In January 2000, a representative of Michigan Rehab Services deemed Plaintiff unable to work at the present time due to fibromyalgia (Tr. 343). Chong Lee, M.D.,, recorded in September, 2000 that "intense rehabilitation exercises" had improved her symptoms of fibromyalgia "tremendously" (Tr. 184). In October, 2000, Plaintiff reported a flare-up of her condition, however by May, 2001 she reported a modest improvement in her condition (Tr. 345). In July, 2001 Dr. Lubetsky completed a Fatigue Questionnaire, opining that Plaintiff could lift a maximum of ten pounds, and sit, stand, or walk for a total of two hours a day (Tr. 348). He concluded his assessment by finding that Plaintiff required

"complete freedom to rest frequently without restriction" (Tr. 348, 352). Also in July, 2001, Mark Ketterer, Ph.D., completed an Affective Disorder questionnaire, finding that Plaintiff experienced sleep disturbance, decreased energy, and difficulty concentrating (Tr. 353). He found that Plaintiff experienced marked limitations of activities of daily living, and moderate difficulties in maintaining social functioning (Tr. 254-255). He concluded that Plaintiff's symptoms would interfere with the ability to maintain reliable attendance in a work setting (Tr. 355).

In June, 2001 Lewis H. Rosenbaum, M.D., determined that Plaintiff satisfied the American College of Rheumatology fibromyalgia criteria including all 18 specific trigger points, but found "no relationship to the claimant's work and the occurrence of [the] disease" (Tr. 675). He opined that Plaintiff's "amplified and out of proportion" reaction to testing, "including diffuse tenderness through all parts of the body not isolated to the typical trigger points of fibromyalgia" led him to conclude that her primary diagnosis was depression (Tr. 675).

In August, 2001, Psychiatrist Saul Forman, M.D., found that Plaintiff experienced a mood disorder due to fibromyalgia, assigning her a GAF of 51-60[1] (Tr. 681). Dr. Forman found that Plaintiff's "changes in her memory, judgment, mood, and depression precluded all employment" (Tr. 682). A January, 2002 sleep study showed negative results for sleep

---

[1]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

apnea, but revealed that Plaintiff experienced involuntary leg movements (Tr. 504).

In June, 2003 Dr. Lubetsky completed a Physical Residual Functional Capacity Questionnaire, stating that Plaintiff continued to experience fibromyalgia as well as depression and anxiety (Tr. 764-765, 767). He deemed that Plaintiff's discomfort interfered with her attention and concentration constantly (Tr. 768). He found that Plaintiff was limited to lifting a maximum of ten pounds and required activities with a sit/stand option, along with the ability to lie down during the course of the day (Tr. 769-771).

### ii. Consultive Sources

In August, 2000 R. Hasan, M.D., performed a psychiatric evaluation of Plaintiff (Tr. 140-142). Plaintiff reported that she enjoyed good relations with her family and a few friends (Tr. 141). Dr. Hasan described her as in touch with reality, but experiencing low self esteem (Tr. 141). Plaintiff denied hallucination, but reported feelings of depression, mood swings, and anxiety attacks due to her physical problems (Tr. 141). She exhibited appropriate affect and was alert to person, time, and place (Tr. 141). Dr. Hasan assigned Plaintiff a GAF of 55, deeming her prognosis "guarded" (Tr. 142).

The same month, a Psychiatric Review Technique indicated that Plaintiff experienced a mood disorder (Tr. 82). The assessment concluded that although Plaintiff had not suffered episodes of decompensation in work, and experienced only light restrictions of daily living, she possessed moderate difficulties in maintaining social functioning and often experienced deficiencies of concentration, persistence or pace (Tr. 86). A Mental Residual Functional Capacity Assessment performed at the same time concluded that Plaintiff experienced a

-8-

moderately limited ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, or respond appropriately to changes in the work setting (Tr. 88-89). The assessment noted that Plaintiff was "[n]ot significantly limited for simple, unskilled work [and] is capable to understand, remember, carry out simple instruction at a persistent and consistent pace" (Tr. 90).

A consultive exam by Bina Shaw, M.D,. noted that Plaintiff had been diagnosed with fibromyalgia and depression (Tr. 133). Plaintiff reported upper and lower back pain, depression, anxiety and memory loss (Tr. 133). Dr. Shaw noted that Plaintiff's spine and shoulders demonstrated a full range of motion as well as an absence of spine tenderness (Tr. 134).

An October, 2000 Physical Residual Functional Capacity assessment determined that Plaintiff retained the ability to lift 20 pounds occasionally and ten pounds frequently along with the ability to sit, stand, or walk for six hours in an eight hour workday (Tr. 93). The report also found that Plaintiff could perform unlimited pushing and pulling, but should be limited to frequent (rather than constant) balancing, stooping, kneeling, crouching, and crawling; and only occasional climbing; stating further that Plaintiff did not possess manipulative, visual, communicative, or environmental limitations (Tr. 94-96). The report concluded that Plaintiff's allegations of disability were only partially credible (Tr. 97).

## C.  Vocational Expert Testimony[2]

Vocational expert ("VE") Lawrence Zatkin classified Plaintiff's past work as a clerk as semi-skilled at the light to medium exertional levels (Tr. 398).  He opined that if Plaintiff's limitations were fully credited she would be unable to perform any full time work (Tr. 399).  The ALJ then posed the following hypothetical question to the VE[3]:

> "Let us assume the existence of a hypothetical person, one who is vocationally situated as is the Claimant in terms of age, education and past relevant work. With respect to such a person, please assume the existence of substantial, credible medical evidence in this record, a reasonable interpretation of which would allow for a conclusion and would support a finding that she retains the residual functional capacity to sit six of eight hours of an eight-hour workday, stand or walk two (sic) of eight hours of an eight-hour workday, lift as much as ten pounds only occasionally and lesser weights perhaps somewhat more frequently.  Assume a well-established history of complaint of pain and discomfort of a varied and diffuse variety associated with concomitant complaints of diffuse and pervasive fatigue, symptoms all of which are undoubtedly disconcerting, but are not of sufficient severity, intensity or frequency to interfere with or otherwise preclude functioning of the level suggested.  You may assume, however, that these deficits are of a sufficient consequence to limit the hypothetical individual with respect to prolonged or protracted standing such that she should not be required to be on her feet any more than a maximum of 15 to 30 minutes at a time.  In addition, you may assume activities such as prolonged walking or protracted walking, climbing of stairs or ladders or engaging in repetitive activities such as bending, stooping, squatting, kneeling, things of that sort, would be contraindicated.  In addition, you may assume that she should not be required to use her upper extremities at or above shoulder level.  You may assume that notwithstanding

---

[2]A vocational expert testified at the July 24, 2001 hearing but not the June 20, 2003 rehearing, apparently because the remand was granted on narrow grounds unrelated to the VE's findings.

[3]The undersigned notes that the hypothetical question is unusually long, but nonetheless included it here verbatim due to its significance in reviewing the administrative record.

-10-

complaints of symptomatology affecting her hands and fingers, she nevertheless remains fully functional to the extent that she is able to engage in simple grasping, perform fine and gross manipulative functions. You may assume the presence of a certain element of depression as is reflected in this file. File, does not reflect, however, any significant cognitive deficit related to that underlying depression. Thus, notwithstanding depression, she nevertheless remains able to understand and remember and to follow instructions, follow through with and complete assigned tasks in a timely and appropriate fashion. In addition, the emotional difficulties, while apparently present, are not of sufficient consequence to interfere with or otherwise inhibit her ability to get along with co-workers, supervisory personnel, or with the public for that matter. Lastly, you may assume that the deficits suffered, or the modalities employed to treat those deficits, do not require or otherwise mandate that the hypothetical individual lie down during the course of a typical workday. If we were to consider the limitations of the sort described, would such a person be able to perform the work performed by the Claimant in the relevant past? If not, would then such a person be able to perform any work that exists in the geographic areas that I mentioned?"

(Tr. 400-401).

Based on the hypothetical question's limitations, the VE found that Plaintiff retained transferable skills from her former job allowing her to perform the sedentary work of a customer service representative, payable or receivable clerk, and cashier, stating that 12,000 such jobs existed in the metropolitan area and 24,000 statewide (Tr. 398-402). He testified that his findings comported with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 402).

**D.  The ALJ's Decision**

**i.  October 4, 2001**

ALJ Wilkenkin found that although Plaintiff experienced the severe impairments of diffuse pain, fatigue, a history of heart disease and an affective disorder, none was severe

enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P,

Regulations No.4 (Tr 11). He found further that "[s]ufficient trigger point of pain as required

do not support Plaintiff's allegations that she experienced fibromyalgia".[4] (Tr. 12, 13).

Adopting the VE's findings, he concluded that although she could not perform her former

work, she  possessed transferrable skills allowing her to perform a significant range of

sedentary work including jobs as a customer service representative and cashier[5] (Tr. 15).

The ALJ found Plaintiff "not totally credible," noting that her admission that she had

recently traveled to Alaska and back "in and of itself (sic) completely discredits her

allegations of not being able to sit for more than 10 to 15 minutes" (Tr. 12). He also cited

Plaintiff's demeanor at the hearing, discrepancies between her testimony of limitations at the

hearing with prior admissions, and her daily activities  to discredit her allegations of total

disability (Tr. 12).

### ii.  September 12, 2003

The ALJ found that Plaintiff experienced the severe impairments of chronic fatigue

and  generalized  muscle  aches  and  pains  secondary  to  fibromyalgia,  complaints  of

hypertension and symptoms related to coronary artery disease, and complaints of recurrent

---

[4]This statement, as stipulated by the Commissioner, constituted the basis of the remand.

[5]The ALJ's decision, which states that 1,200 such jobs existed locally and 2,400 statewide, apparently represents a mis-transcript of the VE's finding which states that *12,000* jobs existed locally and *24,000* statewide (Tr. 15).

depression and anxiety, but determined that none of her impairments met or medically equaled any listed in Appendix 1, Subpart P Regulations No. 4 (Tr. 601).

The ALJ again concluded that Plaintiff, who possessed transferrable skills from her former work, retained the RFC to perform a significant range of sedentary work (Tr. 601). He supported his rejection of Plaintiff's allegations of limitations by noting that "[t]reating and consultative physicians have found no evidence of loss of motor function, significantly decreased range of motion, joint pain, or joint swelling" (Tr. 600).

## ANALYSIS

### A.   Listing 12.04

Plaintiff argues first that the ALJ should have found Plaintiff disabled by fibromyalgia at Step Three of his analysis. *Plaintiff's Brief* at 8. Although she acknowledges that fibromyalgia is not listed among the impairments found in Appendix 1, Subpart P, Regulation No. 4, she submits that her condition should be evaluated similarly to Chronic Fatigue Syndrome. *Id*. She maintains that with fibromyalgia sufferers who exhibit "psychological manifestations related to the impairment, consideration should always be given to whether the individual's impairment meets or equals the severity of any impairment in the mental disorders Listings in 20 CFR, part 404, Subpart P, Appendix 1, Section 12.00ff." Plaintiff argues that in the present case, such an evaluation is properly made under Listing 12.04 Affective Disorders. *Id*.

Section 12.04 reads in pertinent part:

*Affective Disorders:* Characterized by a disturbance of mood, accompanied by

-13-

a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions or paranoid thinking;

*And*

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

Substantial evidence supports the ALJ's determination that Plaintiff's condition did not meet or equal a listing 12.04 at Step Three. Assuming for argument's sake that the great weight of evidence indicated that Plaintiff experienced an affective disorder under the "A" criteria listed above, such a finding must be accompanied by "B" criteria findings that included "marked" deficiencies in both activities of daily living and difficulties in

maintaining social functioning; or, evidence of repeated episodes of decompensation in a work setting.    Although Dr. Ketterer found in the July, 2001 that Plaintiff experienced "marked" restrictions of activities of daily living and "moderate to marked" difficulties in maintaining concentration, persistence, or pace, his findings stand at odds with other portions of the record.[6]  As noted by the ALJ, Plaintiff acknowledged in January, 2000 that she continued to cook and perform household chores; the only limitations imposed by her conditions were that she no longer vacuumed and took care to pace her activities (Tr. 342). Plaintiff acknowledged that she continued to drive (Tr. 342).  Further, she has maintained a continuous relationship with her husband for over thirty years and as well as with her adult son who lives with her (Tr. 370).  Although Plaintiff alleged disabling mental and physical problems which prevented her from sitting for more than fifteen minutes at a stretch, the ALJ noted that Plaintiff had flown to Alaska on a pleasure trip a short time before her first hearing (Tr. 12, 397-398).   While Plaintiff cites record medical evidence which corroborates her allegations of disability, her argument fails due to the existence of substantial evidence supporting the opposite conclusion.

---

[6]In *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991), the Sixth Circuit stated that "it is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight.  If uncontradicted, the physicians' opinions are entitled to complete deference."  However, as discussed above, because Dr. Ketterer's opinion is contradicted in part by other medical assessments as well as Plaintiff's admitted level of activity, it is not entitled to complete deference.

## B.   Credibility[7]

Plaintiff argues next that the ALJ's credibility determination was not supported by substantial evidence, stating her allegations were "clearly corroborated by the clinical observations of all of her treating physicians." *Plaintiff's Brief* at 15.  Likewise, Plaintiff argues that the RFC composed by the ALJ did not incorporate all of her limitations and further, did not specify which of her Step Two impairments  he considered when determining her residual functional capacity.  *Id.* at 15-16.  Plaintiff argues on a related note that the ALJ's failure to include her non-exertional limitations from the hypothetical question renders the VE's job findings invalid.  *Id.*

As a general rule, the courts cede enormous latitude to the ALJ's credibility determinations.  *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993).  In general, the ALJ's finding is entitled to deference by the reviewing court. *Richardson, supra,* 402 U.S. at 401.  An ALJ's credibility determination is guided by SSR 96-7p, which further describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.  1986) "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques"  Second, SSR 96-7p mandates that:

---

[7] Plaintiff's final three arguments which state that substantial evidence does not support the credibility finding, RFC, or job findings contain overlapping discussions of record evidence and will therefore be addressed by the Court in concert.

"once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Although the ALJ acknowledged Plaintiff's fibromyalgia and depression at Step Two, satisfying the first step of the *Duncan* test, substantial evidence, properly culled from the record and discussed at length in the administrative decision, supports the ALJ's rejection of the type and severity of symptoms alleged by Plaintiff, thus failing the second portion of the same test.[8]   The ALJ did not dispute that Plaintiff experienced fibromyalgia, or depression, but he discussed at length why he did not consider either impairment preclusive of  gainful employment, pointing out that Plaintiff's consultive examinations noted that she demonstrated appropriate behavior and a full range of spine and shoulder motion despite her diagnosis (Tr. 597-598  *citing* Tr. 134, 141).   He noted further that Plaintiff continued to perform household chores and maintained longstanding and apparently stable relationships within her family (Tr. 598).   Further, having observed Plaintiff's demeanor at the administrative hearing, the ALJ commented that "[s]he was able to interact . . . without apparent difficulty" with both her representative and himself (Tr. 12).   As

---

[8]The Court notes that a diagnosis of fibromyalgia, in and of itself, does not imply disability.  *See Potts v. Secretary of Health and Human Services,* 1 F.3d 1241, 1993 WL 303363,  6  (6th Cir. 1993).

discussed in section **A.**, Plaintiff's admission that her recent Alaskan vacation included a multi-hour plane ride discredited her allegation that she could not sit in one position for more than 15 minutes. The ALJ's credibility determination, standing alone, cannot form the basis for a remand.

Nonetheless, while the ALJ's credibility determination, drawing on record evidence, was within his discretion, similar deference cannot be accorded to the question posed to the VE, although as a rule, the discretion allotted to an ALJ's credibility determination is extended to his composition of a hypothetical question. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."). However, in the present case, the ALJ's question to the VE either discounted or omitted Plaintiff's nonexertional limitations supported by the great weight of evidence. Although the ALJ's hypothetical acknowledged that Plaintiff experienced depression, he then effectively discounted any impact on Plaintiff's RFC by stating that

> "notwithstanding depression, she nevertheless remains able to understand and remember and to follow instructions, follow through with and complete assigned tasks in a timely and appropriate fashion. In addition, the emotional difficulties, while apparently present, are not of sufficient consequence to interfere with or otherwise inhibit her ability to get along with co-workers, supervisory personnel, or with the general public . . ."

(Tr. 401).

The ALJ's statement that Plaintiff's symptoms of depression were "not of sufficient

-18-

consequence to interfere or inhibit" her work abilities stands contrary to the great weight of evidence. For starters, Plaintiff's treating sources almost unanimously agreed that depression significantly impacted her social and occupational functioning. In June, 2001, Dr. Rosenbaum deemed Plaintiff unfit for work as a result of a "possible psychotic depression" (Tr. 675). Dr. Ketterer determined in July, 2001 that Plaintiff difficulty concentrating and maintaining social function, concluding that her symptoms would interfere with work attendance (Tr. 254-255). The next month, Dr. Forman opined that Plaintiff's depression precluded all employment (Tr. 682). Likewise, Dr. Lubetsky found in June, 2003 that Plaintiff continued to experience depression and anxiety (Tr. 768).[9]

Perhaps even more significantly, Plaintiff's *consultive* sources either found independently or at least acknowledged that she experienced non-exertional impairments which would affect her work abilities. Dr. Hasan gave Plaintiff a "guarded" prognosis (Tr. 142). The Psychiatric Review Technique performed the same month concluded that Plaintiff experienced moderate difficulties in maintaining social functioning and often experienced deficiencies of concentration, persistence or pace (Tr. 86). The Mental Residual Functional Capacity Assessment performed at the same time ended by finding that although Plaintiff

---

[9]Although a number of her care-givers determined that she was disabled, substantial evidence supports the opposite conclusion. *See* Dr. Lee's notes (Tr. 184). *See also* Dr. Lovell's conclusions at Tr. 104. Further, Dr. Ketterer opined that Plaintiff's underlying impairment of fibromyalgia led to her anxiety and depression. Conversely, Dr. Rosenbaum, rejected a fibromyalgia diagnosis, finding instead that Plaintiff's mental health problems rendered her unfit for work (Tr. 675). Despite that fact that substantial evidence supports the ALJ's non-disability finding, it does not support the ALJ's hypothetical observation that depression did not interfere with job related activities.

was not disabled, she apparently retained only the ability for simple, unskilled work (Tr. 90).

Pursuant to *Varley v. Secretary of HHS,* 820 F.2d 777, 779 (6th Cir. 1987), a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *See also Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir. 2004)  Further, in *Bankston  v. Commissioner*, 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000), the Court found that "a mental deficiency occurring 'often' may not be consistent with substantial gainful employment."  *See Whitmore v. Bowen,* 785 F.2d 262, 263-64 (8th Cir. 1986).  "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ . . . a determination of non-disability based on such a defective question cannot stand." *See also Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994).  The Mental Residual Functional Capacity Assessment provides substantial evidence which justifies the ALJ's finding that Plaintiff is not totally disabled.  However, the portion of the Assessment's conclusion that Plaintiff is not disabled cannot be divorced from the rest of the same finding which states that she should be limited to simple, unskilled work.[10]

Pursuant to *Varley,* the hypothetical question's failure to encompass Plaintiff's limitations casts doubt upon the reliability of the VE's job findings.  This Court can only speculate as to whether the findings that Plaintiff could perform the work of a cashier or customer service representative would be adjusted if the hypothetical question had

---

[10]Significantly, none of Plaintiff's other consultive or treating sources found that her work abilities exceeded simple, unskilled work.

acknowledged Plaintiff's limitations as a result of depression.  An accurate jobs finding is particularly essential in the present case due to the ALJ's findings that a number of Plaintiff's skills developed in her semi-skilled job as a Secretary of State clerk were transferrable to a range of sedentary positions.[11]   Given an accurate hypothetical question, the VE can then determine whether Plaintiff's depression implicates those transferrable skills.

Accordingly, a remand for further administrative hearings is necessary to determine whether the VE's job findings would stand if given in reply to a corrected hypothetical question.  However, for the reasons cited above, Plaintiff has not presented an overwhelming case for benefits.  Pursuant to *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994), entitlement to benefits is established only if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."   Thus, the Court recommends a remand for further fact-finding.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded for further fact-finding.  Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140,

---

[11]Due to Plaintiff's age, a finding that she could perform only sedentary, unskilled work would render her disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.09

106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6ᵗʰ Cir.

1991); *United States v. Walters,* 638 F.2d 947 (6ᵗʰ Cir.  1981).  Filing of objections which

raise some issues but fail to raise others with specificity will not preserve all the objections

a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931

F.2d 390, 401 (6ᵗʰ Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370,

1373 (6ᵗʰ Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to

be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages

in length unless by motion and order such page limit is extended by the court.  The response

shall address specifically, and in the same order raised, each issue contained within the

objections.


S/R.  Steven Whalen
R.  STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 17, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys
and/or parties of record by electronic means or U.S. Mail on August 17, 2006.


S/Gina Wilson
Judicial Assistant

-22-